IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MICHAEL SHANE ATKINS                                                                                    PLAINTIFF

VS.                                              CASE NO. 08-CV-1014

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA and UNITRIN, INC. LONG
TERM DISABILITY PLAN                                                                              DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Michael Atkins filed a complaint against Defendants The Prudential Insurance of America ("Prudential") and the Unitrin, Inc. Long Term Disability Plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that Prudential abused its discretion in discontinuing Plaintiff's disability benefits. This matter is now before the Court on Plaintiff's Motion for Summary Judgment. (Doc. 14). Defendants have responded. (Doc. 17). The Court finds the matter ripe for consideration.

## BACKGROUND

Plaintiff brings this case before the Court to seek review of Prudential's decision to terminate his long term disability ("LTD") benefits under the terms of the Unitrin, Inc. Long Term Disability Plan ("the Plan"), which was established pursuant to ERISA. Plaintiff was employed by Unitrin, Inc., as a field insurance agent. Prudential classified Plaintiff's job as light duty, and his job duties included the following: regularly soliciting business from existing policyholders, actively seeking to gain new policyholders, collecting premiums, and delivering newly issued policies. Plaintiff participated in Unitrin Inc.'s disability plan, which was insured by Prudential. In August 2005,

Plaintiff informed Prudential that he was unable to work because of pain in his neck and right shoulder and because of numbness in his left arm. Prudential decided to discontinue Plaintiff's disability benefits after February 12, 2006, because it determined that Plaintiff was not eligible for LTD benefits beyond that date.

I. The Disability Plan

Prudential is the insurer of the Plan and also serves as its claims administrator. As the claims administrator, Prudential has the discretion to determine eligibility under the Plan and entitlement to benefits in accordance with the terms of the Plan. Plan participants are eligible for LTD benefits if they are found to be disabled. The Plan defines "disability" as follows:

> You are disabled when Prudential determines that:
>
> • you are unable to perform the material and substantial duties of your own occupation due to your sickness or injury; and
>
> • you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience.

Prudential, after reviewing the record, decided that the objective medical evidence did not support Plaintiff's claimed disability under the terms of the Plan. Prudential ended Plaintiff's benefits on February 12, 2006.

II. Plaintiff's Medical History

On June 21, 2005, Plaintiff visited Dr. Reza Shahim, who noted that Plaintiff had cervical disc disease. Dr. Shahim recommended that Plaintiff receive epidural steroid injections. Dr.

2

Thomas Hart provided the epidural steroid injections to Plaintiff, and Dr. Hart noted on July 21, 2005, that Plaintiff had "continuing significant improvement in his neck pain complaints." Dr. Hart further noted that Plaintiff's range of movement was improved and his pain had decreased, although Plaintiff still complained of some numbness.

On August 12, 2005, Plaintiff visited Dr. Vora who noted that Plaintiff had been diagnosed with neck pain and depression. Dr. Vora asked Plaintiff to remain off work but that Plaintiff's prognosis for returning to work was "good." On September 1, 2005, Dr. Vora reported that Plaintiff complained of tingling, numbness, and pain in his hands. In an October 2, 2005 note, Dr. Vora advised that Plaintiff should not lift more than twenty pounds. On October 4, 2005, Dr. Vora noted Plaintiff's continuing complaints of tingling, numbness, and pain, and Dr. Vora advised that Plaintiff should remain off work for two more months. He also noted that Plaintiff's mood and affect were better. Plaintiff continued to complain of tingling, numbness, and pain in his arm. On November 29, 2005, Dr. Vora examined Plaintiff and noted that he had right side brachial plexopathy[1], right Parsonage Turner syndrome[2], and neck pain. Dr. Vora recommended physical therapy for Plaintiff's neck, but Plaintiff wanted to wait to begin this therapy.

In either November or December 2005, Plaintiff underwent an arterial leg Doppler and a MRI, and Dr. Vora reported that the results of these tests were normal. On January 5, 2006, Dr.

---

[1]Brachial plexopathy is pain, decreased movement, or decreased sensation in the arm and shoulder due to a nerve problem. Medline Plus, a service of the U.S. National Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/001418.htm (last visited September 25, 2009).

[2]Parsonage Turner syndrome is an alternative name for brachial plexopathy. Medline Plus, a service of the U.S. National Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/001418.htm (last visited September 25, 2009).

Vora's office visit notes reflected that the medication, Lyrica, is helping Plaintiff but he still has some pain on and off. Dr. Vora noted that Plaintiff had a cyst on his left wrist that was causing hand numbness. Dr. Vora further recommended that Plaintiff see a rheumatologist and that Plaintiff remain off work until further notice. He also ordered Plaintiff to follow up with his family physician for all medical problems.

On January 19, 2006, Plaintiff saw Dr. Alsebai, a rheumatologist, complaining of numbness in his right hand and chronic pain in his neck and back. Plaintiff also complained of swollen glands, weight gain, and sensitivity in his hands. Dr. Alsebai noted that he thought Plaintiff was suffering from chronic pain syndrome and mild osteoarthritis of both hands. He ordered some additional laboratory testing, including a test to rule out lupus. On January 27, 2006, Plaintiff had surgery to remove the cyst on his wrist.

In an April 6, 2006 note, Dr. Vora reported no evidence of lupus. He reported that Plaintiff was still stressed out, depressed, and in pain. He noted that Plaintiff should stay off work until further notice. On April 24, 2006, Plaintiff informed Prudential by letter that he was suffering from intestinal bleeding due to stress. He further stated that he was constantly in pain while he was working and that he had complications with medication management.

Plaintiff saw Dr. Robert Watson on April 26, 2006, complaining of rectal pain. Dr. Watson conducted a colonoscopy on Plaintiff and found no gross abnormalities. Dr. Watson referred Plaintiff to Dr. Luttrell, a general surgeon. Dr. Luttrell excised irritation consistent with a fissure and a hemorrhoid.

### III. Claim History

LINA began making short term benefits ("STD") payments to Plaintiff in August 2005. On

September 8, 2005, a Prudential registered nurse reviewed Planitiff's file and concluded that the medical information received by Prudential did not reflect a loss of function or a severity of symptoms that would prevent Plaintiff from performing his job as an agent. However, in order to gather information from Plaintiff's other medical providers, Prudential extended Plaintiff's STD benefits through October 3, 2005, and later through November 25, 2005.

Two other Prudential nurses reviewed Plaintiff's file and concluded that Plaintiff's physical examinations did not reflect a loss of function or a cognitive impairment that would prevent him from performing his job. However, Prudential continued to pay Plaintiff STD benefits while it waited for additional medical information and test results. On January 9, 2006, Prudential informed Plaintiff that it would begin reviewing his claim as a claim for LTD benefits.

On January 26, Plaintiff informed Prudential that he was having surgery on his wrist the next day. Because of the surgery, Prudential approved Plaintiff's claim effective January 28, 2006, through February 12, 2006, to permit recovery time. Prudential explained to Plaintiff that his claim for benefits had been approved through February 12, 2006, based only on the condition of his wrist. In February 2006, another Prudential registered nurse reviewed Plaintiff's file and noted that his file did not reflect a severity of symptoms that would prohibit Plaintiff from sitting, standing, and walking intermittently, or from lifting and carrying twenty pounds occasionally and ten pounds frequently. She further noted that Plaintiff was not restricted from driving.

By letter dated February 9, 2006, Prudential informed Plaintiff of its decision to discontinue Plaintiff's LTD benefits effective February 13, 2006. A Prudential claims manager noted that Dr. Alsebai did not report any restrictions or limitations and that he had ordered additional laboratory testing. The claims manager explained that the need for additional laboratory testing was not

5

considered a disability. She further explained that Plaintiff's medical information did not indicate an impairment that would prevent him from performing his work as an agent beyond February 12, 2006. She noted that Plaintiff's complaints had been long-standing and that no doctor had issued a restriction on driving, sitting, standing, walking, or lifting.

In April 2006, Plaintiff appealed Prudential's decision to discontinue his LTD benefits. Plaintiff informed Prudential that he was now suffering from intestinal bleeding, that he was constantly in pain, and that he had complications with medication management. Prudential submitted Plaintiff's clam file to an independent external physician for review.

Dr. Charles Syrjamaki, the independent external physician, specialized in occupational medicine. Dr. Syrjamaki concluded that Planitiff did not have any functional impairments from February 13, 2006, onward. Dr. Syrjamaki explained that Plaintiff's complaints were primarily sensory in nature and did not impact his motor function. He added that Plaintiff's mild degenerative disc disease did not appear to be clinically significant. Dr. Syrjamaki noted that Plaintiff had subjective complaints of pain, with no significant objective abnormalities. He further noted that Plaintiff's mild degenerative disc disease would not require significant pain medication; however, Plaintiff was taking some pain medications.

Prudential asked Dr. Syrjamaki to identify any appropriate restrictions or limitations on Plaintiff's ability to sit, stand, walk, reach, lift, carry, and perform repetitive activities, and Dr. Syrjamaki noted that there were none. Dr. Syrjamaki noted that Plaintiff had subjective complaints of pain and dysfunction that were not substantiated by diagnostic testing or objective abnormalities. Dr. Syrjamaki opined that Plaintiff's statement that his pain prevented him from working was not substantiated by any objective findings on examination or diagnostic testing.

After receiving notes from Dr. Watson and Dr. Luttrell, Dr. Syrjamaki reviewed the notes and noted that Plaintiff's colonoscopy was normal other than a possible anal fissure. He further noted that Plaintiff had findings suggestive of anxiety, but he left unchanged his previous conclusion that Plaintiff could return to work.

Prudential decided that it should further evaluate Plaintiff's complaints of anxiety. Prudential submitted Plaintiff's file to an independent psychiatrist, Dr. Kelly Clark, for a review. Dr. Clark noted Plaintiff's complaints of anxiety, stress, and depression and his use of different prescription medications, including Cymbalta and Zoloft. Dr. Clark opined that Plaintiff did not have psychological and/or cognitive impairments from February 13, 2006, onward. Dr. Clark further opined that the medical records did not support significant adverse side effects from any medication or combination thereof.

On July 5, 2006, Prudential concluded that it was appropriate for it to uphold its denial of benefits effective February 13, 2006. In December 2006, Plaintiff authored a letter to Prudential appealing the denial decision. He complained that numbness in his hands caused him problems when shaking someone's hand and that the numbness prevented him from "further employment that is by itself stressful." To further assess the severity of Plaintiff's condition of numbness and the impact on his functionality, Prudential referred Plaintiff's file for review by a neurologist.

Dr. Choon S. Rim, a neurologist, performed an independent review of Plaintiff's file. He concluded that Plaintiff did not have any findings consistent with functional impairment from a neurological perspective from February 13, 2006, onward. Prudential again reviewed Plaintiff's file and determined that it was appropriate to uphold its previous denial decision because there was no evidence that Plaintiff suffered from a disability from a neurological, physical, or psychiatric

standpoint.

On January 16, 2007, Prudential informed Plaintiff of its decision. Plaintiff then filed the present lawsuit on February 5, 2008, in state court. The case was removed to this Court on March 11, 2008, and is now before the Court on Plaintiff's Motion for Summary Judgment.

### STANDARD OF REVIEW

Generally, when a disability plan governed by ERISA gives the plan administrator discretionary authority to determine eligibility for benefits, the Court reviews the administrator's decision for abuse of discretion. *Firestone Tire & Rubber Co. v. Branch,* 489 U.S. 101, 115, 109 S. Ct. 984 (1989). The Court will only reverse the plan administrator's decision if it is arbitrary and capricious. *Groves v. Metropolitan Life Ins. Co.,* 438 F.3d 872, 874 (8th Cir. 2006). The Eighth Circuit has stated that "[w]hen a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." *Ratliff v. Jefferson Pilot Fin. Ins. Co.,* 489 F.3d 343, 348 (8th Cir. 2007). Substantial evidence is defined as "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 949 (8th Cir. 2000). The Eighth Circuit has also stated that "[t]he discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made." *Ratliff,* 489 F.3d at 348. The Court may consider the quantity and quality of evidence before a plan administrator and the Court should be hesitant to interfere with the administration of an ERISA plan. *Groves,* 438 F.3d at 875.

### DISCUSSION

The issue before the Court is whether Prudential abused its discretion when it denied Plaintiff's appeal based on its determination that he was not disabled as defined by the Plan.

II. Abuse of Discretion

Plaintiff argues that Prudential abused its discretion in deciding to discontinue his LTD benefits. Specifically, Plaintiff asserts that Prudential acted arbitrarily in relying on the opinions of three independent reviewing physicians rather than on the opinion of Dr. Vora, Plaintiff's treating physician. Plaintiff further asserts that Prudential ignored the medical and vocational evidence provided by Plaintiff in support of his disability claims.

The administrative record reveals that Prudential based its decision to discontinue benefits on: 1) the opinions of three independent reviewing physicians[3] who all concluded that Plaintiff could return to his job; 2) the opinions of a few Prudential nurses 3) examination notes from Plaintiff's treating physicians, including detailed notes regarding physical examinations; and 3) Plaintiff's own comments about his condition. The medical evidence and physician's opinions upon which Prudential relied were not unreasonable or overwhelmed by contrary evidence. All of the independent reviewing physicians, while noting the various diagnoses of Plaintiff, concluded that Plaintiff did not have any functional impairments beyond February 13, 2006, and that he should be able to return to his job as an agent. To the extent that the opinions of the independent reviewing physicians conflicted with the opinions of Dr. Vora, the disagreement concerns primarily whether Plaintiff should be able to return to work. Dr. Vora, although placing no specific restrictions on Plaintiff's ability to sit, stand, walk, reach, or perform repetitive upper extremity activities[4], had not yet released Plaintiff to return to his job. The objective evidence does not reflect that Plaintiff has

---

[3]These reviewing physicians included a physician specializing in occupational medicine, a psychiatrist, and a neurologist.

[4]The Court notes that Dr. Vora did restrict Plaintiff from lifting more than twenty pounds.

any functional impairment. It does, however, reflect Plaintiff's subjective complaints of pain.

Plaintiff contends that Prudential should have given the opinion of his treating physician, Dr. Vora, more weight. Treating physicians are not automatically entitled to special weight in disability determinations under ERISA; however, plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinion of a treating physician. *Midgett v. Washington Group Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965 (2003)). Here, Dr. Vora's opinion was that Plaintiff should remain off work; however, the objective medical evidence does not support the finding that Plaintiff cannot return to his light duty job as an agent.

None of Plaintiff's treating physicians placed any restrictions on Plaintiff's sitting, standing, walking, reaching, or driving. Further, Plaintiff's medical records, including the notes of Dr. Vora, do not support the finding that Plaintiff has any functional impairments that would keep him from performing his job. Dr. Dr. Syrjamaki acknowledged Plaintiff's subjective complaints of pain and Plaintiff's statement that this pain prevented him from working but noted that these complaints were not substantiated by diagnostic testing or objective abnormalities.[5] The independent reviewing physicians were unanimous in their assessments that Plaintiff had no functional limitations that would prevent him from working. It appears to the Court that the reports of the independent reviewing physicians, especially when viewed together, accurately represent Plaintiff's medical record and adequately address the evidence supporting Plaintiff's claim for disability. Prudential

---

[5]No physician found that Plaintiff's complaints of pain were not credible; however, the reviewing physicians concluded that these complaints were not supported by any objective medical evidence. Plaintiff states that his condition is likely to worsen. However, he does not cite to any medical evidence in support of this statement. In fact, there are some physician examination notes in the record that indicate Plaintiff's pain has improved since August 2005.

was not required to credit Dr. Vora's opinion that Plaintiff should remain off work over the opinions of three independent reviewing physicians and the objective medical evidence that supports these physicians' opinions. Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled." *Rutledge v. Liberty Life Assur. Co. of Boston,* 481 F.3d 655, 660 (8th Cir. 2007) (quoting *Delta Family-Care Disability and Survivorship Plan v. Marshall,* 258 F.3d 834, 843 (8th Cir. 2001)).

Plaintiff asserts that Prudential failed to consider all of his medical conditions and ignored certain evidence in the record that supports his claim that he cannot return to his job. The Court disagrees. It appears that Prudential conducted a thorough review of Plaintiff's claim, including submitting Plaintiff's file to three independent reviewing physicians, an Occupational Medicine physician, a psychiatrist, and a neurologist.

Upon the examination of the administrative record and the consideration of Plaintiff's arguments, the Court finds that Prudential's conclusion that Plaintiff did not suffer from a disability as defined by the Plan is reasonable, *i.e.*, supported by substantial evidence.[6] Accordingly, Prudential did not abuse its discretion when it discontinued Plaintiff's disability benefits.

III. Conflict of Interest

The administrative record here reflects that a conflict of interest exists because Prudential was both the Disability Plan administrator and insurer or payer of plan benefits. *See Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343, 2349 (2008). Thus, the Court considers this

---

[6]The Court notes that a plan administrator's decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him or her, not that reasonable person *would* have reached that decision. *Jackson v. Metropolitan Life Ins. Co.*, 303 F.3d 884, 888 (8th Cir. 2002).

11

conflict as one factor among many in determining whether the plan administrator abused its discretion by denying benefits. *Id.* at 2351. The significance of the conflict of interest depends on the circumstances of the particular case. *Id.* In the "combination-of-factors method," the conflict of interest serves as a "tie breaker when the other factors are closely balanced." *Id.* The conflict of interest factor is "more important ... where circumstances suggest a higher likelihood that it affected the benefits decision" and "less important ... where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.*

Plaintiff generally alleges that Prudential's decision was biased. While it is clear that a conflict of interest exists here, the presence of a conflict of interest does not mandate a finding that the benefits determination was prejudiced by the conflict. The Court considers the conflict as one of many factors. Here, there are many other factors that support the finding that the conflict of interest did not cause Prudential to abuse its discretion. These factors include: 1) Prudential's review of additional information from Plaintiff regarding his appeal; 2) Prudential's explanation of information it relied upon in its denial letter and subsequent letter upholding the denial; and 3) AIG's actions of hiring three reviewing physicians that reviewed all of Plaintiff's medical records. After considering all of the factors, the Court finds that Prudential has offered the Court "a reasonable explanation for its decision, supported by substantial evidence," and therefore the Court will not disturb Prudential's denial. *See Ratliff v. Jefferson Pilot Fin. Ins. Co.,* 489 F.3d 343, 348 (8th cir. 2007). Thus, Prudential did not abuse its discretion in denying Plaintiff's appeal based on its conclusion that Plaintiff was not disabled as defined by the Plan.

## CONCLUSION

For the reasons stated above, the Court finds that Prudential did not abuse its discretion in

discontinuing Plaintiff's LTD benefits. Therefore, Plaintiff's claims against Defendants The Prudential Insurance of America and the Unitrin, Inc. Long Term Disability Plan are dismissed with prejudice.  An order of even date, consistent with this opinion, shall issue.

     IT IS SO ORDERED, on this 30th day of September, 2009.


       /s/ Harry F. Barnes
     Hon. Harry F. Barnes
     United States District Judge